## J. H. RANSDELL *v.* M. R. ARIAIL.

The phrase, " the next general election," occuring in the concluding portion of Art. 79 of the State Constitution, has reference only to the general election of Clerks throughout the State, which is evidently designed by the Constitution to take place every four years.

APPEAL from the District Court of the Parish of Rapides, *Cullom,* J. *M. Ryan,* for plaintiff and appellant. *T. C. Manning,* for defendant.

SPOFFORD, J. *C. E. Joüett* was elected Clerk of the District Court in the parish of Rapides, for the regular term of four years, at the November election in 1855.

In May, 1857, he resigned his office, and the Judge of that court immediately appointed the defendant, *M. R. Ariail,* to fill the vacancy, as he was authorized to do by Article 79 of the State Constitution. This appointment was made for the unexpired term of *Mr. Joüett,* and the appointee holds, that, under the true construction of the Constitution, he is entitled to retain the office until the November election in 1859.

The Governor, however, ordered an election to be held for Clerk in the parish of Rapides, at the regular biennial election for Representatives to the General Assembly, &c., &c., which took place in November, 1857. The relator, *J. H. Ransdell,* being then elected and subsequently commissioned, sued out the present *mandamus,* to compel the defendant, *Ariail,* to surrender the office and its archives, which he had refused to do upon amicable demand. The *mandamus* having been refused by the inferior court, the relator has appealed.

The single question presented for our adjudication is as to the meaning of the phrase " the next general election," in the concluding part of the 79th Article of the Constitution.

" Clerks of the inferior courts in this State shall be elected for the term of four years, and should a vacancy occur, subsequent to an election, it shall be filled by

the Judge of the court in which such vacancy exists, and the person so appointed shall hold his office *until the next general election.*"

We find no one species of election styled " the general election" in the Constitution. Article 4 declares, that " the members of the House of Representatives shall continue in service for the term of two years from the day of the closing of the general elections," using the plural, and not without a design. For there is more than one general election. Thus, in Article 18, it is provided that " the first election for *Senators* shall be *general* throughout the State, and at the same time that *the general election for Representatives* is held ; and thereafter there shall be biennial elections to fill the places of those whose time of service may have expired." Again, in the schedule, title X, Article 147 provides, that " the first-class senators, designated in Article 17, shall hold their seats until the day of the closing of the general *elections* in November, 1853, and the second-class until the day of the closing of the general *elections* in November, 1855." The plural was properly employed, because there was in each of those years not only a general election for Representatives to the Assembly, but a general election for Sheriffs, a general election for Coroners, &c., &c.   But, although we thus find, from the phraseology of the Constitution itself, that its framers recognized the fact that there were various general elections, or, rather, that there was a general election for each class of officers who were to be voted for at once throughout the State, yet, they nowhere designated any one of these elections as preëminently " THE general election."

The term general election was probably used to designate an election which takes place throughout the State, in contra-distinction to a partial election, or that which takes place only in certain portions of the State ; as, for instance, the biennial elections for Senators, one-half of whom vacate their seats every other year. If the expression related not to the generality of the election with regard to its territorial extent, but to the number of officers voted for, then " the general election," *par excellence,* would be the gubernatorial election which is quadrennial only.

But our opinion is, that the term " general election," should be construed with reference to the subject-matter of the Article in which it is found ; thus construed, there is no great difficulty in arriving at the meaning of Article 79. It first provides that Clerks of the inferior courts in this State (that is throughout the State) shall be elected for the term of *four years ;* then, that should a vacancy occur subsequent to an election (that is an election for Clerks), it shall be filled by the Judge of the court in which such vacancy exists ; and, finally, that the person so appointed shall hold his office until the next general election, (that is, general election for Clerks,) which, as already provided, occurs every four years.

This view acquires additional strength from a consideration which appears to have controlled the judgment of the lower court in this case, to wit : that the terms of elective officers prescribed by the Constitution are indivisible, and, with one or two exceptions, uniform, so as to begin and end at certain fixed periods simultaneously throughout the State.   When vacancies occur by death, resignation or removal, the old term does not lapse and a new and independent term begin, but provision is made merely for supplying the vacancy for the residue of the old term, at the expiration of which things resume their normal course.   The Article 148 in the schedule declared, in order to establish this uniformity with regard to Clerks, " that the first term of service of the District Attorneys and the Clerks of the inferior courts to be ordered and established under this Constitution, shall be

regulated by the term of service of the first Governor, so that a new election for these officers shall be held on the first Monday of November, 1855." Thenceforward, the general elections (*i. e.* the elections throughout the State) for these officers were evidently designed to take place every four years. Arts. 74, 79. And such is the legislative interpretation. Rev. Stat. p. 84, sec. 4, *Clerks ;* Ibid, p. 182, sec. 1, *District Attorney.* Now, this uniformity and regularity would be destroyed if the phrase " the next general election," in Article 79, be construed to mean the next general *elections,* or the general election for Representatives, rather than the general election for the class of officers which is alone treated of in Art. 79, to wit : Clerks of the inferior courts. For that Article only provides one mode of filling a vacancy, that is by appointment of the Judge. It does not provide that a portion of the vacancy shall be filled by appointment of the Judge, and the residue by a popular election. No authority was given by the Constitution to *elect* a Clerk for a less term than four years, after the first. Clerks elected under it should go out of office in November, 1855. If, therefore, the plaintiff was properly elected in November, 1857, he must remain in office, or his term at least must last, until November, 1861, whereas, the intention was that there should be another *general* election for Clerks in November, 1859. The system inaugurated by the Constitution of 1852 would thus be thrown into confusion. This irregularity could not be avoided without giving a very strained interpretation to Art. 79, to wit : that, if a vacancy occurs subsequent to an election, it shall be filled by the Judge of the court in which such vacancy exists, and the person so appointed shall hold his office until the next general election, *when, the remainder of the unexpired term, if any, shall be filled by popular vote at such election.* And, even if we superadd these words, a *casus omissus* might remain, viz : the occurrence of a vacancy at a period too late to have the necessary notices given for the popular election, and an appointment by the Judge previous to a general election, which must expire with it, leaving a two years vacancy unprovided for.

We are aware that a different interpretation may have been placed upon Art. 79 by the Executive of the State, in other instances besides the present. But we apprehend little practical inconvenience from this circumstance, as no contest can arise where the parties in interest have acquiesced in such executive interpretation, by giving up the offices which they held under a judicial appointment. *Guzman* v. *Walker,* 11 An. 693 ; *State* v. *Morgan,* 12 An. 712.

Judgment affirmed.